UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEAN HANNIFORD,

                          Plaintiff,

            -against-

CITY OF POUGHKEEPSIE, et al.,

                          Defendants.

**MEMORANDUM OPINION
AND ORDER**

21-CV-10359 (PMH)

PHILIP M. HALPERN, United States District Judge:

Dean Hanniford ("Plaintiff") brings this action against the City of Poughkeepsie ("City"), City Sergeant Terrance Beam ("Beam"), and City Police Officer Edward Fenichel ("Fenichel," with Beam, the "Officer Defendants," and collectively, "Defendants"). (Doc. 21, "FAC"). Plaintiff asserts four claims for relief under 42 U.S.C. § 1983 ("§ 1983") against the Officer Defendants for malicious prosecution, false arrest, fabrication of evidence, excessive force; and a claim of municipal liability against the City under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ("*Monell*") against the City. (*See generally*, FAC). Plaintiff originally pressed an additional claim against the Officer Defendants under the New York State Constitution but has since withdrawn that claim. (Doc. 30 at 12).

Defendants, in accordance with a briefing schedule set by the Court, served their motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) on May 3, 2022. (Doc. 24; Doc. 25, "Posner Aff."; Doc. 26, "Def. Br."). Plaintiff's opposition was served on May 15, 2022. (Doc. 30, "Opp. Br."). Defendants served their reply brief on June 13, 2022 (Doc. 31, "Reply"), and the motion was fully submitted with the filing of all the foregoing motion papers that day.[1]

---

[1] On May 20, 2022, Plaintiff filed his Amended Complaint as of right pursuant to Fed. R. Civ. P.

For the reasons set forth below, Defendants' motion to dismiss is GRANTED IN PART.

## **BACKGROUND**

Plaintiff's claims arise from his arrest, effectuated by the Officer Defendants on May 15, 2022. (FAC at 1). The following facts are taken from the Amended Complaint as well as the documents annexed to counsel's declarations. (Posner Aff.; Doc. 29; "Konan Aff.").[2]

---

15(a)(1)(B), adding the *Monell* claim against the City. (FAC). Defendants, apparently choosing to stand on their extant motion rather than serve a new one, addressed Plaintiff's newly-pled *Monell* claim only in their Reply.

[2] Defendant submits the following documents to the Court: (i) an Indictment of Plaintiff dated September 29, 2020 (Doc. 25-2); (ii) a guilty plea transcript dated July 19, 2021 (Doc. 25-3); (iii) a sentencing transcript dated September 7, 2021 (Doc. 25-4); (iv) a proceeding transcript dated August 12, 2021 (Doc. 25-5); (v) the Officer Defendants' incident reports (Doc. 25-6); (vi) accusatory instruments against Plaintiff, dated May 15, 2020 (Doc. 25-7). Plaintiff does not object to the use of any of these documents and, in fact, also proffers through his own opposition various items above. (*See generally*, Konan Aff.).

"[T]he Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken . . . ." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) (explaining that a court may consider "statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit"). Even if a document is not incorporated by reference into the complaint, the Court may consider a document "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFalco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The Court may also take notice of documents in the public record. *Fox v. City of New York*, No. 18-CV-09661, 2019 WL 3003993, at *4 (S.D.N.Y. July 10, 2019) (concluding that the extraneous arrest report was integral to the pleading because it provided "crucial details" concerning the plaintiff's false arrest claims (internal quotation marks omitted)); *McClinton v. Henderson*, No. 13-CV-03335, 2014 WL 2048389, at *1-2 (E.D.N.Y. May 19, 2014) (Bianco, J.) (considering parole revocation hearing transcripts on a motion to dismiss); *Awelewa v. New York City*, No. 11-CV-00778, 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) ("Judicial notice may be taken of public records, including arrest reports, criminal complaints, indictments, and criminal disposition data." (internal quotation marks omitted)).

Because each of the documents submitted by Defendants are either referenced in or integral to the Amended Complaint, or part of the relevant public record, the Court will consider them. With respect to the two transcripts submitted (items three and four listed above), however, the Court will not consider any "excerpts of the . . . transcript reflecting piecemeal segments of colloquy between the court and counsel [because] . . . an attorney's statement or argument is not evidence." *Ventillo v. Falco*, 19-CV-03664, 2020 WL 7496294, at *5 n.11 (S.D.N.Y. Dec. 18, 2020) (internal quotation removed).

In addition to re-submitting certain documents already proffered by Defendants' counsel's declaration, Plaintiff submits additional court filings relating to the interest of justice dismissal of his

Plaintiff was on Garden Street in Poughkeepsie on May 15, 2020, when he was stopped by Fenichel, who asked him about a robbery at a dollar store. (FAC ¶ 14). When Fenichel asked for identification, Plaintiff "ignored" him. (*Id.*). Fenichel then "attempted to grab" Plaintiff, Plaintiff pulled himself away, and Fenichel fell to the ground. (*Id.*). Fenichel called for backup, stating that Plaintiff had assaulted him. (*Id.* ¶ 15). Beam apparently responded and assisted Fenichel in effectuating Plaintiff's arrest with the use of force. (*Id.* ¶ 16; ¶ 92). Plaintiff alleges that "there was no robbery committed at any Family Dollar Store in Dutchess County on the day of May 15, 2020," and that he "did not use any force against Officer Fenichel." (FAC ¶¶ 26-28). This account, of course, differs drastically from those of the Officer Defendants, as reflected in their incident reports. Fenichel admits that he "made up a story" about a dollar store robbery because he had been contacted by Beam to assist in identifying the subject of an investigation. (Posner Aff. Ex. F).[3] Fenichel also reports that Plaintiff "pushed and punched [him] several times" before the two wrestled for approximately 30 seconds and Plaintiff fled. (*Id.*). Beam reports that he and Fenichel "were assisting the New York State Police in stopping the subject of a probable cause investigation" and that Plaintiff "violently resisted by pushing and punching Officer Fenichel" before fleeing. (*Id.*).

Plaintiff was charged with Resisting Arrest in violation of N.Y. Penal Law § 205.30, Second Degree Assault in violation of N.Y. Penal Law § 120.05(3), and Physical Injury in violation of N.Y. Penal Law § 120.00.02, each of which were dismissed in the interests of justice

---

charges. Defendants object to the submission of these materials. However, given the Court's disposition *infra* with respect to Plaintiff's malicious prosecution claim, it need not rely on these documents. Citations to the parties' exhibits correspond to the pagination generated by ECF.

[3] These incident reports are not only referenced in the Amended Complaint as part of Plaintiff's fabrication of evidence claim (FAC ¶ 15) but are "integral to the pleading because [they] provide[] crucial details concerning the plaintiff's false arrest claims." *Fox*, 2019 WL 3003993, at *4 (internal quotation removed).

on August 13, 2021. (Posner Aff. Ex. E). No warrant was issued for Plaintiff's arrest as of May 15, 2020. (FAC ¶ 76). Plaintiff, however, was indicted on September 29, 2020 in Dutchess County Court of six counts of Possession and Sale of a Controlled Substance in violation of N.Y. Penal Law § 220.39 for sales made on May 8, 2020, May 12, 2020, and May 15, 2020. (Posner Aff. Ex. B). Plaintiff pled guilty to those narcotics charges on July 21, 2021 and was sentenced on September 7, 2021. (Posner Aff. Ex. C; Ex. D).

This litigation followed.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and

4

'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

Plaintiff brings each of his five claims for relief under § 1983, which provides in pertinent part that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "This language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Thus, to state a claim under § 1983, Plaintiff must demonstrate "(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor." *Id.*; *see also Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-08586, 2019 WL 1368560, at *17 (S.D.N.Y. Mar. 26, 2019). The "first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Defendants seek to dismiss each of Plaintiff's claims for relief, except for the third (excessive force) to the extent alleged against Fenichel.

I.     First Claim for Relief: Malicious Prosecution

In order to establish a § 1983 claim for malicious prosecution, "a plaintiff must . . . establish the elements of a malicious prosecution claim under state law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Manganiello v. City of New York*, 612 F.3d 149,

5

160-61 (2d Cir. 2010)). Accordingly, under New York law, Plaintiff must allege: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* (internal quotation marks omitted). When pressing a malicious prosecution claim under § 1983, the plaintiff must show also "that there was (5) a sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

Defendants' argument with respect to malicious prosecution is two-fold: (i) they are entitled to qualified immunity because, at the time of the incident, the law of this Circuit was clearly established that an interest of justice dismissal could not satisfy the second element of a malicious prosecution claim; and (ii) Defendants had probable cause to arrest, negating the third element of a malicious prosecution claim.

   a.   Qualified Immunity

The affirmative defense of "qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (quoting *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016) (alteration added)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an official's belief that his action does not violate clearly established law is "objectively reasonable," he or she is shielded from liability

by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013) (internal quotation marks omitted). Although qualified immunity may be raised on a motion to dismiss, advancing such a defense as grounds for a motion to dismiss "is almost always a procedural mismatch" as such a defense "faces a formidable hurdle and is usually not successful." *Sabir v. Williams*, 52 F.4th 51, 64 (2d Cir. 2022) (internal citations and quotation marks omitted).

The Supreme Court, in *Thompson v. Clark*, "h[e]ld that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." 142 S. Ct. 1332, 1341 (2022). Under this standard, the interest of justice dismissal of Plaintiff's charges on August 21, 2021 satisfies the favorable termination element of Plaintiff's claim. Defendants' argument, however, is that they are entitled to qualified immunity because the law in this Circuit, prior to its abrogation by *Thompson*, was that a plaintiff "must establish that the state prosecution terminated in his favor, and that proceedings are terminated in favor of the accused only when their final disposition is such as to indicate the accused is not guilty." *Lanning v. City of Glens Falls*, 908 F.3d 19, 26 (2d Cir. 2018) (internal quotations removed). Under the *Lanning* standard, which was the law at the time of Plaintiff's arrest and disposition of his charges, Plaintiff may have been unable to demonstrate the favorable termination element of his claim.

First, the Officer Defendants attempt to suggest that Plaintiff's drug arrest is the factual predicate for his malicious prosecution claim; and that *Thompson*, in effect, has no bearing on the Officer Defendants' qualified immunity defense to malicious prosecution. The factual predicate is belied by the allegations in the first claim for relief. (*See* FAC at 4-8). Second, Defendants do not identify a single case in which the defense of qualified immunity is established by the unfavorable

7

termination of criminal proceedings against a plaintiff. The reason for this is simple: favorable termination is an element of a malicious prosecution claim, not an element of a qualified immunity defense. Defendants, in a situation where a favorable termination is lacking, will move to dismiss for failure to state a claim for malicious prosecution, and not for an affirmative finding that the affirmative defense of qualified immunity has been met by a reading of the four corners of the complaint. Such a deficiency would be fatal to a plaintiff's claim for relief but almost certainly irrelevant to a defendant's defense of qualified immunity. Defendants posit, however, that "[t]he change in the law does not change the result required here, i.e., dismissal of the malicious prosecution claim, just the rational for that dismissal." (Def. Br. at 11). This Court is unwilling to make such a finding.

Moreover, qualified immunity is determined at the time of the official's conduct and does not depend on a later determination on a plaintiff's charges. *See, e.g. Almighty Supreme Born Allah*, 876 F.3d at 597 ("[a] Government official's conduct violates clearly established law when, *at the time of the challenged conduct* the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.") (emphasis added and internal quotation omitted). The purpose of qualified immunity is to protect officials who have an objectively reasonable belief that their conduct is not violative of a person's rights. *Cooper*, 925 F. Supp. 2d at 608. Finding that Defendants were retroactively bestowed qualified immunity by the disposition of Plaintiff's charges more than a year after the time of their conduct is entirely inconsistent with the affirmative defense and would further cloud the already murky area of judging qualified immunity issues at the time of a motion to dismiss.

b.  Probable Cause

Defendants' next argument against Plaintiff's malicious prosecution claim is that, because there was probable cause to arrest Plaintiff, the claim fails at the third element. "Probable cause to arrest . . . exists when the officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Wierzbic v. Howard*, 836 F. App'x 31, 34-35 (2d Cir. 2020) (internal quotation marks omitted). This standard is an objective one and evaluates "the reasonable conclusion to be drawn from the facts known to the officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). A court must consider "the totality of the circumstances and . . . be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted). "Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013).

"The arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged." *Tompkins v. City of New York*, 50 F. Supp. 3d 426, 433 (S.D.N.Y. 2014). Rather, probable cause "to arrest the suspect of any crime" will suffice. *Coleman v. City of New York*, No. 03-CV-04921, 2009 WL 705539, at *3 (E.D.N.Y. Mar. 16, 2009); *see also Butler v. Brito*, No. 15-CV-09718, 2017 WL 2116687, at *3 (S.D.N.Y. May 15, 2017). If there is reason to doubt a witness' credibility, corroborating evidence can support probable cause. *See Brodie v. Fuhrman*, No. 07-CV-04212, 2010 WL 1189347, at *5-6 (E.D.N.Y. Mar. 29, 2010). Finally, "[a]

false arrest claim is defeated by the plaintiff's conviction for the offense for which he was arrested." *Phelan v. Sullivan*, 541 F. App'x 21, 23 (2d Cir. 2013). Separately, under the imputed knowledge doctrine, an arrest is permissible where the actual arresting officer lacks the specific information to form the basis for probable cause but "sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) (citing *United States v. Hensley*, 469 U.S. 221, 230-33 (1985)); *United States v. Canieso*, 470 F.2d 1224, 1230 n. 7 (2d Cir. 1972). This rule exists because, "in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation" and "sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." *Colon*, 250 F.3d at 135 (citing *United States v. Valez*, 796 F.2d 24, 28 (2d Cir. 1986)).

Defendants' syllogism is put thusly: (i) probable cause for any offense is sufficient to support an arrest; (ii) Plaintiff's later guilty plea for drug charges establishes probable cause for that offense; and (iii) Defendants were therefore justified in arresting Plaintiff. This logic misses an important step. Probable cause "is an objective [inquiry] that focuses on the facts available to the arresting officer *at the time of the arrest*." *Finigan v. Marshall*, 574 F.3d 57, 61-62 (2d Cir. 2009) (emphasis added). The Court is unable to ascertain, without the benefit of discovery, what if anything Beam and Fenichel knew about the drug investigation into Plaintiff *at the time of arrest*. Although "[t]he arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged," *Tompkins*, 50 F. Supp. 3d at 433, the officer still needs to have known about, at a minimum, the circumstances establishing probable cause for that other offense. Even considering the imputed knowledge doctrine, it is unclear at this stage in the litigation whether *any*

officer had sufficient knowledge to support probable cause that could then be imputed to the Officer Defendants.

Defendants cannot plausibly argue that if they had no information about the drug investigation and only arrested Plaintiff for no reason other than resisting arrest, that a stroke of luck would vindicate them by retroactively creating probable cause once Plaintiff was indicted for a drug offense occurring on the day of his arrest. The extent of Defendants' and other officers' contemporaneous knowledge of the drug investigation into Plaintiff is still unknown to the Court at this stage. Ultimately, Defendants very well may have had probable cause to arrest Plaintiff. Nothing in this Memorandum Opinion should be read to preclude that argument at a later stage in this litigation. But dismissal is, at this stage, inappropriate.

Defendants' motion is, therefore, denied to the extent it seeks to dismiss Plaintiff's first claim for relief.

II.    Second Claim for Relief: False Arrest

 As with malicious prosecution, "[a] false arrest claim under Section 1983 'incorporates the elements of the state law where the arrest took place'—here, New York." *Johnson v. City of New York*, No. 18-CV-06256, 2020 WL 2732068, at *3 (S.D.N.Y. May 26, 2020) (quoting *Youngblood v. City of New York*, No. 15-CV-03541, 2019 WL 6216498, at *5 (S.D.N.Y. Nov. 21, 2019)). Accordingly, to state a claim for false arrest under § 1983, Plaintiff must plead "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks omitted).

11

Like in the malicious prosecution context, "probable cause is an absolute defense to a false arrest claim." *Stansbury*, 721 F.3d at 89 (quoting *Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 139 (2d Cir. 2010)); *see also Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011); *McClenic v. Shmettan*, No. 15-CV-00705, 2016 WL 3920219, at *4 (E.D.N.Y. July 15, 2016) (explaining that "probable cause is a complete defense to a false arrest claim, even where the plaintiff was ultimately acquitted of the criminal charges") (internal quotation marks omitted)). For the reasons discussed *supra* in the malicious prosecution context, the Court is unable to conclude at this stage in the proceedings that probable cause existed to arrest Plaintiff. The Court recognizes that "[t]he Second Circuit has established that the probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases because in the malicious prosecution context the facts and circumstances must be such that a reasonably prudent person would believe the plaintiff guilty." *Wheeler v. Kolek*, No. 16-CV-07441, 2020 WL 6726947, at *9 (S.D.N.Y. Nov. 16, 2020) (internal quotations removed). Nevertheless, "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence have no place in the probable-cause decision." *Id.* at *4 (alterations removed). As such, whether considered in connection with malicious prosecution or false arrest, the Court is unable to determine that probable cause existed at this stage in this proceeding.

Defendants' motion is, therefore, denied to the extent it seeks to dismiss Plaintiff's second claim for relief.

III.     <u>Third Claim for Relief: Excessive Force</u>

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness standard.'" *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v.*

*Connor*, 490 U.S. 386, 395 (1989)). To determine whether an officer's force is objectively reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Graham*, 490 U.S. at 396). The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Graham*, 490 U.S. at 396). Where a Plaintiff resists arrest, the "force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *McMillan v. City of New York*, No. 10-CV-02296, 2011 WL 6129627, at *5 (S.D.N.Y. Dec. 9, 2011) (quoting *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000)). The Court is mindful that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal citations and quotations omitted).

Defendants argue that Plaintiff uses impermissible "group pleading" with respect to his excessive force claim and seek dismissal of Plaintiff's third claim for relief to the extent alleged against Beam. (Def. Br. at 8 (citing *Swinson v. City of New York*, 19-CV-11919, 2022 WL 142407 at *4-5. (S.D.N.Y. Jan. 14, 2022))). Defendants aver that there is no allegation that force was used when Plaintiff was later apprehended, and because "logic dictates [Beam] arrived as backup," he would not have been involved in the earlier force. (*Id.* at 7-8). However, Plaintiff states specifically that the "Officer Defendants used force to take Plaintiff to the ground thereby causing severe physical injuries to Plaintiff's leg." (FAC ¶ 94).[4]  Whether "logic dictates" that Beam was present

---

[4] Just because Plaintiff uses the plural term "Officer Defendants" rather than stating their individual names does not make this impermissible "group pleading." In *Swinson*, for example, the plaintiff had alleged five claims for relief against seven different defendants without identifying which were liable for each claim. Here, on the other hand, there are only two Defendants and Plaintiff's allegation makes clear that he means to allege that *both* took him to the ground and used excessive force.

or not is insufficient on a motion to dismiss, where the Court is required to weigh every inference in Plaintiff's favor. Whether Beam was present at the scene when force was used is a fact issue to be decided at a later stage in this litigation.

Defendants' motion is, therefore, denied to the extent it seeks to dismiss Plaintiff's third claim for relief.

IV.     Fourth Claim for Relief: Fabrication of Evidence

Plaintiff's fourth claim for relief is styled as one for fabrication of evidence but is more properly considered as a claim for denial of a fair trial. *Ventillo*, 2020 WL 7496294, at *12. To establish such a claim, a plaintiff must show that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Ganek v. Leibowitz*, 874 F.3d 73, 90 (2d Cir. 2017). "To satisfy the third element, the fabricated evidence need not actually reach a jury." *Boykins v. Lopez*, No. 21-CV-02831, 2022 WL 2307684, at *9 (S.D.N.Y. June 27, 2022) (internal quotation removed). Finally, "[p]robable cause is not a defense" to this claim. *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012).

Defendants argue that Plaintiff's right to fair trial claim fails at the second and fifth elements. (Reply at 7-8). With respect to the second element, Defendants argue that the specific allegations in the Amended Complaint concerning the falsity of the incident report filed by Defendants are inconsistent – i.e. Plaintiff claims that Defendants' report falsely accuses him of punching Fenichel *in the head* (Def. Br. at 6-7) whereas the report actually only says that Plaintiff punched Fenichel generally (Posner Aff. Ex. F). Nevertheless, accepting Plaintiff's factual allegations as true as the Court must at this stage, whether the alleged falsity entails a punch to the face or not is inconsequential. Plaintiff's allegation that he never punched Fenichel *at all* is

14

sufficient to support the second element of a right to trial claim where Fenichel's incident report states that punching occurred.

Defendants' next argument is similarly unavailing. With respect to the fifth element of this claim, Defendants argue that Plaintiff did not suffer a loss of liberty because of his parallel drug investigation and prosecution. However, as Defendants acknowledge, Plaintiff "spent from mid-May to mid-September 2020 in custody prior to his felony drug indictment." (*Id.* at 8). The four-month span of incarceration attributable to the May 15, 2020 arrest is more than sufficient to establish a loss of liberty for purposes of the fifth element of this claim.

Defendants' motion is, therefore, denied to the extent it seeks to dismiss Plaintiff's fourth claim for relief.

V.      Fifth Claim for Relief: *Monell* Liability

Plaintiff's fifth claim for relief is brought under *Monell* against the City. Under *Monell* and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom. *See Jimenez v. City of New York*, No. 18-CV-07273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020) ("Plaintiff must plead allegations that 'the government body *itself* subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation.'" (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original)). "[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)). Such a claim "cannot lie in the absence of an underlying constitutional violation." *Galgano v. Cty.*

*of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020) (quoting *DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017)).

Plaintiff's *Monell* claim fails because the Amended Complaint lacks facts supporting the existence of a municipal policy or practice. Plaintiff only alleges facts relating to his own claim. *See, e.g.*, *Smith v. Westchester Cty.*, No. 19-CV-01283, 2019 WL 5816120, at *5 (S.D.N.Y. Nov. 7, 2019) (dismissing *Monell* claim where plaintiff "describe[d] only his own experiences"); *Oriental v. Vill. of Westbury*, No. 18-CV-03878, 2019 WL 4861413, at *4 (E.D.N.Y. Oct. 2, 2019) (dismissing *Monell* claim where "the complaint contain[ed] only a detailed account of plaintiffs' own experiences"). That Plaintiff couches the allegations about his own experience as having happened to multiple people does not save his claim. Such boilerplate allegations, without more, are insufficient to support a *Monell* claim. *Williams v. Lohard*, No. 20-CV-10571, 2022 WL 269164 (S.D.N.Y. Jan. 28, 2022).[5]

Plaintiff's fifth claim for relief is, therefore, dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and Plaintiff's fifth claim for relief is DISMISSED with prejudice. As Plaintiff's fifth claim for relief was the only claim raised against the City, the City is dismissed as a Defendant in this case with prejudice.

---

[5] Because of the procedural posture discussed *supra*, Plaintiff's *Monell* claim was first raised in the Amended Complaint and, therefore, could not have been addressed in Defendants' opening memorandum of law for this motion. Defendants, instead, addressed the *Monell* claim only in their reply. Although Plaintiff did not respond to those arguments, because of the deficiencies identified *supra*, no response would save the claim. Moreover, as Plaintiff is represented by counsel, he reasonably could have requested a sur-reply on Defendants' *Monell* arguments.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 24 and terminate the City of Poughkeepsie as a Defendant in this case.

**SO ORDERED:**

Dated:    White Plains, New York
          November 29, 2022

PHILIP M. HALPERN
United States District Judge

17